1558 N. Ray Universal Electronics, Inc. Mr. Levenstein, you have two minutes to vote. Is that right? That's correct. OK. May it please the court, my name is Matthew Levenstein, and I represent the appellant, Universal Electronics, Inc. The prosecution, the application at issue here, demonstrates the danger of engaging in hindsight bias on a thin record. I just want to briefly outline a few points that I want to make today. First, there is no record evidence, let alone something that rises to the level of substantial evidence, to support the board's conclusion that the Arling reference meets the tag file limitation. And I'll just note that this is a different Arling reference than what was discussed before in an earlier appeal. The examiner and the board relied primarily on Arling paragraph 30, but they found disclosure of a brand and type of a device that simply does not exist in that paragraph. Second, there's no record evidence that a person of ordinary skill in the art would have been motivated to combine Arling with Niirumoto, the primary reference here. You know, the parties have written many pages on the motivation to combine issue, but what really counts here is what's the actual record evidence of motivation to combine. And the actual record evidence consists of just a few short lines from the examiner saying that a person of ordinary skill in the art would combine Arling with Niirumoto to, quote, improve overall operability. The problem with improving overall operability is that's a motivation for literally any invention that's ever been created. So in our view, that's insufficient to establish a motivation to combine the Arling and Niirumoto references. And very briefly, my third point is there's just no record evidence to support, and this is with respect to Dependent Claim 3, that Niirumoto discloses the use of a file name as data that indicates that a link was activated. The board, without any analysis, simply accepted the examiner's conclusion that a selectable link on a user interface is equivalent to a file name. And even before we get into the details of the references themselves, just from a common-sense perspective, that doesn't make sense. Can I ask you, with that background, one thing you didn't mention was collateral estoppel. And for me, I think that's a pretty strong argument that, you know, given that there's a prior decision finding that Arling taught a tag file, I think we might be bound by that. And so I'm wondering, I hope you're going to address it today. Absolutely, Your Honor. And if it's all right with you, Your Honor, I'd like to provide just a little bit of context about this claimed invention, which I think will help shed light on why collateral estoppel should not apply here. And so what the claimed invention here is, in Dependent Claim 2, it's a novel way of using a relay device in between the user's input device that has a graphical interface and one or more controllable appliances that you're attempting to control. And what the claimed invention does here in the 381 application that's different than the earlier 146 application is that it has a very specific tag file content and use that was not an issue in the earlier In Re Black decision. And that specific tag file content is, number one, it has to contain specifically the brand and type of the device that's to be controlled. And then it uses that brand and type to call up a code... a set of code data for a particular appliance that then can be reused over and over again as additional activatable links are activated on the user... on the input device. Excuse me. And so this is reflected when you simply compare the claim language of Claim 2 at issue here and the Independent Claim at issue in In Re Black. In Re Black, and I'm quoting here from appendix page 718 and 719, this is the claim language. Quote, "...the tag file comprising both a definition of the controllable device and a listing of one or more commands to be transmitted to the controllable device." End quote. And here, as your honors are aware, the tag file requires... the tag file limitation requires something different, something more. It requires that the tag file comprise a first data indicative of the brand and type of device that is to be commanded. That was not at issue in In Re Black. What about the contention that your specification, you know, indicates that when you're referring to the word definition, you're talking about brand and type? The specification of the 381 application, and actually the application at issue in In Re Black, does use brand and type when you're using the term definition. But that does not mean that the issue before the In Re Black court was whether brand and type... whether brand and type of the tag file were disclosed by the prior arts. It was just a question of whether the more general quote, definition, was disclosed by the prior arts. So this is much narrower. But if definition means brand and type, I'm not following you. I won't say that definition means brand and type. Certainly, in the In Re Black decision, they pointed to a portion of the specification that referred to, quote, device conversion definitions. But that relates to an entirely different aspect of the invention than what's set forth in Figure 10b, which is, I believe, what you're referring to, definition 1020 that has the brand and type of the Motorola cable box set-top. And so with that, I'll take a step back and just say I don't think this issue was adequately raised by the director. Who would have raised it? I'm sorry? Who would have raised it and when? Certainly before the board at some point in the examiner's answer, perhaps. But it wasn't. And so with that, I don't think it's an issue that... So you think the examiner had to raise the collateral estoppel issue? I would say the examiner should have raised the collateral estoppel issue, yes. Turning back to my first point about whether there is substantial evidence that supports the board's... What part would the examiner have to raise the issue if there's no one disputing or challenging the examiner on that point? On the collateral estoppel point? Well, it would seem prudent with knowledge of the issue after appellant disclosed the information relating to the previous In re Black decision that they would raise that and discuss that before the board to give the board an opportunity to rule on it. So returning to my first point about whether there's substantial evidence for the board's finding that Arlen meets the tag file limitation, there are three, let's say, relevant aspects to the limitation at issue here. The first is whether there is first data indicative of a brand and type of a device. And I'll begin with that. The evidence that the board relies on in Arling comes from paragraph 30 and 41. Paragraph 30 appears on appendix pages 847 and 848, and Arling paragraph 41 appears on appendix page 850. I won't read those because they're long paragraphs, but what I can say is that neither paragraph discloses the use of brand and type in the context of an XML or tag file. Alternatively, what paragraph 30 does disclose is three other types of data. Appliance data, media state data, and command data. But it never ties any of those data types to the brand and type of the device that's to be controlled. So moving on to the second kind of sublimitation, the second data indicative of one or more commands to be transmitted to the device. It appears, although it's not entirely clear from the board decision, that the board is relying on the command data as the claims, quote, second data here. But the problem is the command data isn't stored in the tag file. It's not clearly stored in memory at all. And so it can't be the second data. Arling paragraph 30 at appendix page 847 and 848 says only that the appliance data and the media state data are stored in the tag file, or the .xml file, rather, and that those data are used to generate command data. So with those two limitations in mind, we get to the third limitation related to the tag file, which is that the first data and the second data must be in the same tag file itself. Paragraph 30 of Arling doesn't really teach that. And rather, what it teaches is that you could save in memory appliance data and media state data, but not specifically in a single tag file, which, again, is what is the magic here of the claimed invention. Moving to my second point, there's no substantial evidence to support the motivation to combine Niwamoto with Arling, and there's no actual board findings in the board decision. What the board does is simply repeat what the examiner said, which is, and I'm quoting here, the examiner finds one would have been motivated to provide this functionality because it provides an established system with one-to-one mapping for accessing information, thereby improving overall operability, and then did not make an additional statement about motivation to combine in the analysis. So without any analysis by the board, or really by the examiner either, to the extent we look there, there's no meat on the bones. There's no rational underpinning to create the claimed invention here. There's no discussion, for example, why an admittedly, quote, established system would benefit from the one-to-one mapping for accessing information. There's no explanation why the systems are similar in the first place, and there's really no explanation why the specific type of tag file in Arling, which, by the way, doesn't disclose the claimed tag limitation, would be beneficial to Niwamoto at all. My final point, which I'll briefly make since my time is almost up, is that there's no substantial evidence for the board's finding that Niwamoto teaches the limitation of Claim 3, quote, wherein the data that functions to indicate that the activatable link was activated comprises a file name of the tag file. The gravamen of the board's argument here is that selectable links are equivalent to file names, and that comes from Appendix Page 8, and it's cited in the examiner's answer in Appendix Page 793. Do you think they mean by that they're equivalent in that that's what's used to invoke the tag or invoke the function? It could be, but frankly, I don't know what they mean by that. How do you call a tag file? Well, one way you could do it is with a file name. Are there other ways? Possibly, but there's no record evidence about what other ways could be used or could not be used. Do all tag files have a name? I would assume so, Your Honor, but that's based on me, not based on any record evidence. Okay. And I see that my time is up. Good morning, Your Honors. May it please the Court. I'd like to begin by addressing the collateral estoppel issue. Judge Rayner, you offered the Inouye Black decision, which decided or found that the Arling reference in Paragraph 30 disclosed a tag file limitation having two additional limitations, including a definition of a device and a command for the device to be controlled. That's substantially the same issue that we're dealing with here. Could you address waiver? Sure. Why? I mean, it does seem a little... To be honest, I'm not sure about the waiver argument because the Board, it seems to me, should be able to address it for the first time, but I would like to hear from you, legally, why that would be correct. Yeah, so I think there are exceptions to the general principles of waiver if there are circumstances that excuse it. In this case, there is an MPEP Section 2100, which specifically says if there's material information... Just a second. Is this Toronto? Yes. Yes. Did you have a question? No, I did not. I'm sorry. Okay. All right. Christine, please. Okay, thank you. The MPEP Section 2100 specifically says if there's material information that arises from a litigation, the applicant must bring that to the attention of the examiner or the PTO official that's handling that decision. And in this case, the In Re Black decision issued in July of 2019. Okay? After that decision, in this application, one month later in August of 2019, they amended their claims to overcome the In Re Black decision. And we know that because if you look at their reply brief, they actually state that on page 12 of their reply brief in footnote 4. They said, UEI amended the claims of the 301 application after the In Re Black decision was issued to differentiate the tag file limitation at issue here from the tag file limitation at issue in In Re Black. If you look at their claim amendment, it doesn't make any mention to the examiner of the In Re Black decision or the reason for making that amendment other than to clarify the invention. So the examiner was not put on notice at that time when they made the claim amendment. Then four months later in October of 2019, the examiner issued the non-final office action, which is the basis for this appeal. The examiner had not been put on notice of the In Re Black decision at that point. Then in January of 2020, UEI filed a notice of appeal. There's still no disclosure. It wasn't until they filed their appeal brief in June of 2020, after all this had occurred almost a year later, when they attached the In Re Black decision as an attachment, but they didn't describe it in their appeal brief. If you look at their appeal brief and they describe it in the related cases, they did disclose that there was this related appeal. They didn't make any mention of the In Re Black decision by name or appeal number. What about the argument that the other side makes that the office itself should have been more assertive in making this argument and raising and asserting In Re Black? Well, in this case, if the examiner or the board were made aware of the decision, they may have raised the collateral estoppel issue. It's just in this case, there's no evidence that they were ever aware of it. The In Re Black decision was never cited on an IDS. It's not described in the appeal brief. It's just kind of attached as an exhibit, but not actually described in the appeal brief. So if you read the appeal brief, you'd actually have no idea that the In Re Black decision was included. Then when we got this appeal at the solicitor's office, we recalled this. I actually happened to work on that In Re Black appeal. We looked at it, because it did kind of ring a bell, and we looked at it, and we found this decision, and we're like, it has a tag file limitation, and we thought it was prudent to bring it to the attention of the court, so you at least were made aware of that decision. Assuming that none of the parties brought up the case, what authority would you have at that point to assert In Re Black on their own? Well, it is a decision of this court. I think it certainly is very persuasive. It's a very persuasive decision. I mean, it's a carefully considered decision that expressly considered the tag file limitation, spanning 14 pages, and it found that Arling, paragraph 30, teaches that limitation, including device definitions and commands to be sent to the control device. And the only difference, real substantive difference, is instead of device definitions, they've changed that to brand and type of the appliance, and that's not really a material difference. I think, as Judge Stoll, you were making that point. The 381 specification actually says that device definitions refer to the brand and type, and Arling does the same thing. If you look at paragraph 80... I'm sorry. Can you give me the very specific page citations, the one that you just mentioned and the one that you're about to mention? It's the same spec, right? Yeah, I think the 381 specification refers to device definitions as referring to brand and type. That's in the specification. Do you have a specific... Yeah, I want a page and line number. I know it's in our brief. I'll have to pull that. Let me see. Looks like the 381 application has this at APPX 59. 59? I believe so. I'm looking at page 9 of the director's brief where we talk about where they have figure 10B. Starting on line 3. Yeah, and if you look at APPX 59 of the appendix, it says... It refers to the... Oh, I'm sorry. I have it right here. So it's 5, 6, 7. It's line 8 on page APPX 59. It says you refer to this appliance type CE1376. It says EG, a Motorola cable STB, which refers to set-top box. So that's referring to it by brand and type. That's in the 381 specification. And then if you look at the Arling reference, it's in three paragraphs. Paragraph 18. Which is on what page? APPX 845. Thank you. Kind of in the middle of the paragraph here. It refers to home appliances of different brand, model, or type. What paragraph? Paragraph 20? That's paragraph 18. Right in the middle, there's a sentence that starts with, once data has been saved, it may be recalled at a later time. It's kind of a long sentence. You go down like five or six lines. It refers to different home entertainment centers having a set of home appliances of different brand, model, or type, which offer analogous services. And then, again, on the following page at APPX 846, paragraph 26, the very first sentence, it says to identify home appliances by type and make. And then in parentheses, it says, and sometimes model. And then, again, in paragraph 31, it again refers. This is the APPX 848. At paragraph 31, the first sentence, it talks about appliances 12B, may correspond to appliances 12A in type, but may differ in make and or model. And what specifically was the dispute of pertinence to this collateral estoppel question? What was the specific dispute in in-rate black? I think UEI is arguing that the limitation at issue in-rate black. I'm sorry. Right, so I understand, I think, UEI's argument is that the limitation was broader and something narrow in Arlington could satisfy that limitation, and that's all that was actually decided in in-rate black. Is that, was there a dispute about, yeah, I guess that's how I understand the argument. At least in some circumstances, that would not be enough for issue preclusion because you can come within something broader without a finding that it is a specific subset of that broader thing. I think that could be true in some cases, but in this case, and we've done a comparison in the director's brief at page 33, and in the specification in both the 381 application and in the description in Arlington, there doesn't seem to be any really material difference between the limitation of a device definition and the brand and type information. They seem to be referring to the same thing, and to the extent they're not, it seems like it's not a material difference. And in that situation, collateral estoppel does apply. And the other elements are certainly met. We've got the same party, UEI. We've got a final judgment by this court. They had a full and fair opportunity to litigate the issue. And so I think collateral estoppel is met. And there hasn't been a waiver because, as I was explaining, there are reasonable circumstances that explain why the examiner and the board didn't raise collateral estoppel, and the director raised it at the first time that we were aware of it and brought it to the court's attention. And even putting aside collateral estoppel, if you just look at the merits of the decision, I think NRA Black is a carefully considered decision. Like I said, it was spanning 14 pages. It considered the issues. It came to, I think, a firm conclusion that Arlington does teach or disclose a tag file limitation, having device definitions and command data. And that's, you know, to the extent there is a difference between device definitions and the brand and type information, we just walk through the disclosure of Arlington that teaches those, you know, the brand and type information. And so I think it's, you know, even putting collateral estoppel aside just on the merits, it's met the substantial evidence that supports that rejection. There's no further questions on the collateral estoppel and just the merits of whether Arlington teaches that tag file. I'm happy to answer if there's any questions on those two issues. Otherwise I'll move on to the motivation to combine issue. In this case, you know, if you read the board's decision, it says that it agrees with the examiner's decision, affirms the rejection and is adding the following for emphasis. And it went on to repeat the examiner's motivation to combine, which was that there's one-to-one mapping, which provides improved operability. And that seems like it's a fairly good rationale here because the whole purpose of Arlington is if you look at figure 10B, I'm sorry, figure one in Arlington, the whole purpose is you have one set of devices in the home appliance center on 12A. You have a second set of systems or appliances in 12B. You're going to provide device definitions and command data, you know, from the first set to the second set. So you have this one-to-one mapping. So then when you hit your remote control, you can have the same functionality on the second set of devices. And so I think that does improve functionality, operability, provides the one-to-one mapping. That seems like a sufficient motivation to combine the references. And then there's no further questions on that issue. Just turning to the file name limitation in claim three, the examiner and the board both found that that limitation was met by the combination of Niwamoto and Arlington. And they found that, you know, as we've talked about, Arlington teaches the tag file limitation. Niwamoto discloses the file name part of it. And when you combine those two, you have a tag file with the file name. Did they say use the word file name? With respect, did they say that it taught a file name specifically? Let's see. This is in the office action at APPX 653. Okay. Let's see. Yeah, it says this is at the bottom of A653. We're talking about claim three. It says we're in the data that functions indicate that the activatable link was activated, comprises a file name of the tag file. And then in parentheses it cites to Niwamoto, column 23, lines 42 to column 24. So it does use the word file name there. And their challenge seems to be that Niwamoto doesn't teach that limitation by itself, but it was really a combination of the two references. So I think it's kind of a moot point. So I'm almost out of time if there's no further. Well, one question is I think that they said there was a concern about the examiner's statement that the selectable link I might have, I hope I have the language right, is equivalent to the file name. How do you respond to that? I believe that's right. I believe the examiner found that the selectable link, that's the link that's going to show up on your remote control, it's going to have a link there with something, and that was equivalent to a file name, and found that was sufficient to meet the limitation. Thank you. You have a little bit over two minutes, Counselor. Thank you, Your Honor. I will be very brief in just a few points I want to make, and while I appreciate my colleague Gumption in making his arguments about Claim 3 respectfully, I still don't see how a selectable link is equivalent to a file name, and I don't think the record reveals that either. The portions of Niwamoto, I'm sorry, the portions of the office action on appendix page 653 that cites to Niwamoto, which is column 23, line 42 to column 24, line 60, I don't believe that they actually use file names in any of those portions. So while the examiner used the word file name, I just don't think it's enough to say that a selectable link is equivalent to that file name. Turning back to the collateral estoppel issue very briefly, again, my colleague has said that, well, the issues were substantially the same. I said, well, that's not really the question here. They have to be the same issue. And here they were not the same issue, even though they both nominally include a tag file, nominally relate to, excuse me, a tag file limitation. But because of those differences in the tag file limitation, it does materially alter the invalidity question, and collateral estoppel shouldn't apply. With respect to the disclosure of the In re Black decision, if you look at Appendix pages 714 to 750, you can see that UEI did submit the board decision on appeal and the In re Black decision relating to the 146 application, and I'm not aware of any reason why the examiner couldn't have addressed collateral estoppel in the examiner's answer. And finally, with respect to the other paragraphs of Arling that use the words brand and type, I don't believe the board relied on those. And beyond that, this again just highlights the concern with this thin record here, that it appears to be a cherry-picking of relevant words from the references in order to come to the claimed invention that, in UEI's view, is simply an application of hindsight bias. I see my time is up, and unless there are any questions, I will sit down. Thank you. Thank you. We thank all the parties for their argument this morning. All cases are taken under advisement, and we stand in recess.